**A. N. OVERBY, Acting Secretary of the Treasury, Appellant,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY and The First National Bank of Auburn, Appellees.**

**No. 15419.**

United States Court of Appeals
Fifth Circuit.
June 28, 1955.

Donald B. MacGuineas, Samuel D. Slade, Attys., Dept. of Justice, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., Hartwell Davis, U. S. Atty., Montgomery, Ala., for appellant.

Ralph B. Tate, Joseph G. Gamble, Jr., Frank M. Young, Birmingham, Ala., for appellees.

Before HOLMES and RIVES, Circuit Judges, and WRIGHT, District Judge.

RIVES, Circuit Judge.

This appeal by the Acting Secretary of the Treasury is from an order denying a claim of privilege asserted by him, and ordering the President of the appellee bank to produce for discovery certain reports of examination of said bank made by National Bank Examiners to the Comptroller of the Currency and correspondence with the Comptroller.[1]

The order was issued in a suit brought by appellee bank against appellee surety

1. "* * * all correspondence by and between the First National Bank of Auburn and the Comptroller of the Currency, or the Deputy Comptroller of the Currency, during the years 1948–1954, inclusive; all correspondence by and between the First National Bank of Auburn and the National Bank Examiners during the years 1948 to 1954, inclusive; and copies of all reports of examinations of the First National Bank of Auburn made by the office of the Comptroller of the Currency, or by the National Bank Examiners for the years 1948 to 1954, inclusive."

company seeking recovery in the sum of $100,000.00 for the alleged breach of a bond indemnifying the bank against losses through any dishonest, fraudulent, or criminal act of an employee of the bank. The district court's order explains why the surety wants the documents:

"The defendant has not as yet made answer to plaintiff's complaint, asserting that if the documents sought in the motion to produce are made available, such documents will show that plaintiff through its officers and directors had knowledge of the alleged fraudulent and dishonest acts of its employee and failed to comply with the duty they were legally bound to perform as contained in the following items of the bond:

"'At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter (the defendant) written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars.'

"'This bond shall be deemed terminated or cancelled as to any Employee—(a) as soon as the Insured shall learn of any dishonest or fraudulent act on the part of such employee * * *.'"

The bank's president, Mr. Duran, appeared for the taking of his deposition but declined to produce the Comptroller of the Currency correspondence and the bank examiner's reports on the ground that he had been instructed by letter from the Acting Comptroller of the Currency not to produce them because the documents were privileged. The surety then filed a motion to require Duran to produce these documents. At this point appellant, the Acting Secretary of the Treasury, filed an Assertion of Interest and Claim of Privilege opposing the surety's motion to produce on the ground that the material requested is privileged against compulsory disclosure. This claim of privilege was supported by an affidavit of the Acting Secretary of the Treasury in which he stated that "after having given actual personal consideration to the matter", he was asserting a formal claim of privilege and found that the introduction in evidence of the documents "would be inimical to the public interest."[2]

2. The claim of privilege is best explained in the affidavit, and we therefore quote its substance in full:

"The reports and correspondence are within the control of the Treasury Department, Office of the Comptroller, although officers and directors of the bank properly and legally have copies thereof for special and limited purposes.

"I am advised that there is an evidentiary privilege which belongs to the Government against the production of these reports and correspondence. This privilege has three aspects or is a congeries of three separate privileges each of which in itself is sufficient. (first) This is a privilege against the disclosure of the identity of informants and the contents of their communications relative to possible violations of statutes which are enforced by the Comptroller and to some of which criminal penalties attach. (second) This is a privilege deriving from or established by specific statutes—the National Bank Act, as amended [12 U.S.C.A. § 21 et seq.] (and buttressed by the Administrative Procedure Act [5 U.S.C.A. § 1001 et seq.]). (third) This is a general privilege belonging to the Government in consequence of the authority vested in the heads of the several departments to control the use of records and papers belonging to their respective departments (5 U.S.C. § 22 and 31 CFR 1.1 to 1.5).

"I, as acting head of the department that has control over the matter, hereby assert and lodge a formal claim of evidentiary privilege against the production of the subpoenaed reports and correspondence, after having given actual personal consideration to the matter. I do not lightly invoke this privilege. I find that their introduction in evidence would be inimical to the public interest.

"It has always been the position of the Office of the Comptroller of the Currency that reports of examination of national banks and related correspondence and papers are confidential documents of the Treasury Department. It would be contrary to long established policy to make the reports public for any pur-

pose other than enforcement of the National Bank Act, as amended, and cognate statutes.

"Reports of examination of national banks contain information obtained by the staff of the Comptroller of the Currency in the exercise of the Comptroller's visitatorial powers. This information is obtained from the banks or submitted by the banks in confidence. The successful functioning of the Comptroller's office depends in great measure upon its being able to obtain confidential information about the affairs of the banks and their customers from the banks themselves. The managements of national banks know that information submitted by them to the Comptroller in confidence is treated confidentially by him, and that such information is never made available to the public. The possibility that reports of examination might be required to be produced in court would make bank managements reluctant to furnish to the Comptroller information desired by him, and consequently, would definitely impair the Comptroller's ability to perform his statutory duty of supervision of the national banking system.

"Reports of examination of national banks contain much information which, at the very least, if revealed to the public, would be misunderstood owing to inability to evaluate the relative importance of the matters criticized and discussed. This could not fail to adversely affect the banks concerned. These reports may contain information about violations of law, some important and others of negligible importance. Certain banking policies, some important and others of negligible importance, may be criticized or discussed.

"Reports of examination of national banks contain much information about the customers of national banks, about their financial affairs, and about the status of their loans from the banks. These customers of the banks, the vast majority of whom are not involved in the litigation have the right to have their affairs treated confidentially both by the banks, and by the Comptroller of the Currency who in the performance of his statutory duty necessarily gains knowledge of their affairs. Making such information matters of public record might adversely affect many customers of the banks.

"Because of the delicate and sensitive interests involved in bank supervision it is, and has always been, the view of the Treasury Department that the use of copies of the reports of examination of national banks as evidence would be inimical to the public interest in that it would make more difficult the work of the Bureau of the Comptroller of the Currency, it could injure bank customers, and it might tend to unwarrantedly weaken the confidence of the public in particular national banks, because of an inability to evaluate the matters revealed in the reports. The net result would be harmful to the national banking system as a whole, to the detriment of the United States.

"Information about particular loans which might be involved in litigation is available from the books of the banks and those books would be the best evidence of the transactions involved.

"Copies of the reports of examination and related correspondence and papers in the possession of national banks are furnished for the information of the boards of directors and the officers of the banks but are confidential documents of the Treasury Department. Each copy of the reports of examination bears the following caption:

" 'This report of examination has been made by an examiner selected by the Comptroller of the Currency and is designed for use in the supervision of the bank. This copy of the report is the property of the Comptroller of the Currency and is furnished to the bank examined for its confidential use. Under no circumstances shall the bank, or any of its directors, officers, or employees disclose or make public in any manner the report or any portion thereof. The information contained in this report is based upon the books and records of the bank, upon statements made to the Examiner by directors, officers, and employees, and upon information obtained from other sources believed to be reliable and presumed by the Examiner to be correct. It is desired that each director, in keeping with his responsibilities both to depositors and to stockholders, thoroughly review the report. In making this review, it should be kept in mind that an examination is not the same as an audit, and this report should not be considered to be an audit report.'

"As required by Section 3 of the Administrative Procedure Act (5 U.S.C. § 1002), the Treasury Department published its position with respect to examination reports in the Federal Register for September 11, 1946, (11 F.R. 177A–14). This regulation stated in part that 'Reports of examination of financial institutions under the jurisdiction of the Comptroller and other information obtained by him in the exercise of his visitatorial powers over such institutions are

The district court, upon giving consideration to the Assertion of Interest and Claim of Privilege stated:

"This court is unable to find as a fact that the information sought in these documents is of such a confidential nature that its disclosure would be inimical to the public interest. To the contrary, the court finds as a fact that such documents contain no such information of a highly confidential nature as require them to be privileged. The proper administration of justice requires their production. * * *"

Accordingly, the district court denied the Assertion of Interest and Claim of Privilege, granted the surety's motion to produce, and ordered that the bank's suit would be dismissed unless the president of the bank complied with the court's order within thirty days.

■ At the threshold, appellee surety company moves to dismiss the appeal on the ground that the order denying the claim of privilege is not appealable. Counsel for the bank had informed the district court that, apart from the prohibition of the Comptroller of the Currency, the bank had no objection to producing the documents. Under threat of a dismissal of the bank's suit, it is to be anticipated that the documents would have been produced in the absence of some appeal or stay order. After such production, there would be no further point to the claim of privilege, it would be irretrievably breached and beyond the protection of an appellate court. We think, therefore, that the order is in effect a final decision appealable under 28 U.S.C.A. § 1291, even though the main suit between the bank and the surety has not been concluded.[3] The cases relied on by appellee surety are readily distinguishable because in each of those cases denial of the privilege could be reviewed on appeal either from the final judgment or from a contempt order.[4]

■ The appellant, asserting a continuing right of control of, and property right in, the documents, has standing to maintain this appeal whether or not he was formally recognized as a party to the suit in the district court.[5] Accordingly, the motion of appellee surety company to dismiss the appeal is denied.

The question to be decided is whether there was a valid claim of privilege. The manner of assertion of the claim followed the course outlined in United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727: "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer."

classified as confidential, because such information is obtained by or submitted to him in confidence, its revelation might adversely affect such institutions, the affairs of their customers, or others dealing with them or this Bureau and would be inimical to the public interest.' "

3. Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 688–689, 70 S.Ct. 861, 94 L.Ed. 1206; Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546–547, 69 S.Ct. 1221, 93 L.Ed. 1528; Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387, 91 L.Ed. 1646; Sutphen Estates v. United States, 342 U.S. 19, 20, 72 S.Ct. 14, 96 L.Ed. 19; Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3; Radio Station WOW v. Johnson, 326 U.S. 120, 124–127, 65 S.Ct. 1475, 89 L.Ed. 2092; Lamb v. Cramer, 285 U.S. 217, 221, 52 S.Ct. 315,

76 L.Ed. 715; Penfield Co. v. Securities and Exchange Commission, 330 U.S. 585, 591, 67 S.Ct. 918, 91 L.Ed. 1117.

4. Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783; Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686; Cogen v. United States, 278 U.S. 221, 49 S.Ct. 118, 73 L.Ed. 275; Bank Line v. United States, 2 Cir., 163 F.2d 133; Pennsylvania R. Co. v. Kirkpatrick, 3 Cir., 203 F.2d 149; Carter v. Baltimore & O. R. Co., 80 U.S.App.D.C. 257, 152 F.2d 129.

5. Go-Bart Importing Co. v. United States, 282 U.S. 344, 356, 51 S.Ct. 153, 75 L. Ed. 374; Perlman v. United States, 247 U.S. 7, 12–13, 38 S.Ct. 417, 62 L.Ed. 950; Forgay v. Conrad, 6 How. 201, 203–204, 47 U.S. 201, 203–204, 12 L.Ed. 404; Delta Drilling Co. v. Arnett, 6 Cir., 186 F.2d 481, 484.

■ That case establishes the doctrine, we think, that, while every reasonable effort should be made by the parties, by the court, and by the head of the executive department to avoid a conflict of interests, in the final analysis, the court and not the executive officer is to determine the validity of the claim of privilege.

"The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect. * * * Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." United States v. Reynolds, supra, 345 U.S. at pages 8, 9–10, 73 S.Ct. at page 532.

See also 8 Wigmore on Evidence, 3rd ed., Para. 2379, pp. 798–799.

■■ We do not think that any privilege has been waived by putting copies of the documents in the hands of the directors of the bank.[6] Only in that way could the documents be effectively used for their whole purpose was the adequate supervision and regulation of national banks. If the bank directors violated their trust and, without authority, showed copies of the examiner's reports to the bank's attorneys and auditors for the purposes of this litigation, it nevertheless remains true that, "The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party." United States v. Reynolds, supra, 345 U.S. at page 7, 73 S.Ct. at page 532. Hence, any wrongful disclosure of these reports by the bank directors cannot constitute a waiver of the Government's privilege.

■ To discuss at length the difficult and important subject of Governmental privilege against disclosure of official information [7] would unduly extend this opinion, and is not now necessary, for we are of the clear opinion that the order to produce is in such broad terms (footnote 1, supra) as to require reversal. Much of the matter claimed to be privileged and which would have to be produced under such an order bears no possible relevance to the defense of the bank's suit, and there is no necessity for requiring its production; such for example as the disclosure of the identity of informants, information about customers of the bank, their financial affairs, and the status of their loans from the bank, and various other matters not pertinent to the defense of the bank's suit. We have held that a subpoena too broadly drawn may be modified accordingly.[8]

The brief of appellee surety discloses that its counsel have fairly definite information about the evidence they desire.[9] It should not be too difficult for

---

6. See Duncan v. Cammell, Laird & Co., A.C. 624; In re Grove, 3 Cir., 180 F. 62; Bank of America Nat. Trust & Savings Ass'n v. Douglas, 70 App.D.C. 221, 105 F.2d 100, 123 A.L.R. 1266.

7. See 4 Moore's Federal Practice (2nd ed.), Para. 26.25(3)–(8), pp. 1162–1183; 8 Wigmore on Evidence, 3rd ed., pp. 733, et seq.; Annotations, 95 L.Ed. 425, 97 L. Ed. 735, 32 A.L.R.2d 391, 123 A.L.R. 1278.

8. N.L.R.B. v. Anchor Rome Mills, Inc., 5 Cir., 197 F.2d 447, 449; Jackson Packing Co. v. N.L.R.B., 5 Cir., 204 F.2d 842, 844.

9. "Often times, we are informed, the Comptroller required the Board of Directors to report to him over the signature of each member of the Board what remedial steps were being taken to remedy certain questionable transactions, loans, practices, etc. We are informed that in some of these letters, the members of the Board admitted they knew of certain loans and transactions of Mr. Wright (our defense of knowledge and ratification) which now form the basis of this suit. The minutes of the Board during this period are very sketchy and defendant by examining them cannot obtain accurate and complete information on the subject. Three Directors have been examined on oral deposition. Each denies knowledge and ratification of Wright's acts and doings on the items now in suit. If it be a fact that the directors did know and ratify these acts and doings of Wright, and if it be a fact

them to prepare detailed written interrogatories or requests[10] to the witness calling on him to produce or attach duly authenticated copies[11] of such parts only of the documents as may be pertinent to the defense of the suit, describing the same as accurately as they can. Appellee surety company states in brief:

> "Defendant seeks information from the documents relating only to the very items made the basis of the suit and about which such items there will be testimony in open court for the Bank has seen fit to bring this suit. * * * Defendant does not desire to know the identity of any so-called 'informers'."

Any matter disclosing or indicating the identity of informers could therefore be deleted.

Upon the submission to the Secretary of the Treasury of a copy of such written interrogatories or requests and an offer by the surety company to pay for the cost of preparing authenticated copies of such parts of the documents requested as the Secretary might be willing to furnish without claiming privilege, it may be that there will be no claim of privilege. If, however, the appellee surety demands more than the Secretary is willing to furnish without claiming privilege, it will then become necessary for the Court to rule upon the validity of any such claim.

Through such procedure, or some similar procedure, the competing public interests of the administration of justice and of governmental privilege may be reconciled. Every reasonable effort will have been made to avoid a conflict. If, nevertheless, a claim of privilege has to be decided by the Court, at least it will be in as narrow compass as possible.

The judgment is, therefore, reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

that in certain of their letters to the Comptroller the Directors admitted they knew of Wright's acts and doings and ratified them, then the *only* source available to defendant to prove knowledge, notice, ratifications, etc. is in these letters and reports for the Bank's records do not show them and the minutes of the Board are, as said, silent on the subject or incomplete.

\* \* \* \* \* \*

"We have information tending to indicate knowledge and ratification by the Bank of Wright's acts. See also the statement of Whatley and Cauley, Defendant's Exhibit 4 to Duran's testimony, page (7) as follows:

" 'Attitude of Bank's Board of
Directors
" 'Mr. Duran, we feel that some of the information contained in this report can be construed fairly only in light of two pieces of correspondence bound into the minute book of the bank. The first is the letter of February 19, 1952, addressed to the Board of Directors of the Bank. The letter is signed by W. M. Taylor, Deputy Comptroller of the Currency. This letter criticizes the Board of Directors of the Bank as well as Executive Vice-President G. H. Wright. The letter further constitutes a first warning to the Board of Directors and Mr. G. H. Wright under Section 30 of the Banking Act of 1933 (Title 12, U.S.C. Section 77).

" 'The second piece of correspondence referred to is the reply signed by the members of the Board of Directors of the bank to the first letter stated above in which the members of the Board of Directors set forth their approval of certain of Mr. G. H. Wright's actions, especially the refinancing of Thomas G. Evans in October 1951, and the financing of the sale to Auburn Manufacturing Company at that time of Evan's handle mill business.' "

10. See Rule 30(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

11. 28 U.S.C.A. § 1733. "Government records and papers; copies

\* \* \* \* \* \*

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof."