Anna N. O'KEEFE, as Administratrix of the Goods, Chattels and Credits of Michael F. O'Keefe, deceased, et al., Plaintiffs,

v.

The BOEING COMPANY, Defendant.

United States District Court
S. D. New York.

Oct. 8, 1965.

Kreindler & Kreindler, New York City, for plaintiffs, Lee S. Kreindler, George Edwin Farrell, New York City, of counsel.

Mendes & Mount, New York City, for defendant, James M. Fitzsimons, of counsel.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for United States, Robert Kushner, Asst. U. S. Atty., Harland F. Leathers, Harold P. Shapiro, Attys., Dept. of Justice, Lt. Col. William D. McCarthy, Lt. Col. George H. Gibbons, Office of the Judge Advocate General, United States Air Force, of counsel.

WYATT, District Judge.

These are two related motions. The first is by plaintiffs under Fed.R.Civ.P. 34 for discovery and inspection of certain documents in the possession of defendant The Boeing Company ("Boeing"). The second is by the United States under Fed. R.Civ.P. 24 to intervene for the purpose of opposing on the ground of a claimed "executive privilege" the motion of plaintiffs for discovery and inspection in so

far as that motion relates to certain of the documents in the hands of Boeing.

The action (commenced on January 23, 1964) is for wrongful death and personal injuries caused when a B–52 jet bomber aircraft of the United States Air Force ("Air Force"), manufactured by Boeing, crashed on January 24, 1963, near Greenville, Maine. Plaintiffs are the personal representatives of six members of the crew killed in the crash and the one surviving member of the crew. The complaint alleges negligence and breach of warranty by Boeing.

The Court has jurisdiction from diversity of citizenship. 28 U.S.C. § 1332(a) (1).

The documents as to which discovery and inspection is sought by plaintiffs are described in paragraphs numbered 1 through 11 of a letter dated July 8, 1964 from counsel for plaintiffs to counsel for Boeing.

The opposing affidavit for Boeing does not appear to object to production of any of the documents sought, except to the extent that the Air Force may object to such production on grounds of privilege or otherwise. In other words, Boeing for itself makes no objection to the motion and the Pre-Trial Examiner recommended that in any event objection by Boeing should be treated as without merit.

The United States moves to intervene to assert a privilege. Certainly the Secretary of the Air Force, whose affidavit and claim of privilege is submitted to the Court, ought to be heard in this connection. It is a technical question whether this should be done through intervention under Fed.R.Civ.P. 24 or otherwise, for example, as an amicus curiae. The method can make no difference to plaintiffs. After reflection, it appears that under Fed.R.Civ.P. 24(b) the "claim or defense" of the United States has "a question of law or fact in common" with "the main action" in the sense that a "party" (such as Boeing) to the "main action" could oppose this motion of plaintiffs. Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 460, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). The motion of the United States to intervene is, therefore, granted with such intervention limited to opposing the present motion of plaintiffs for discovery and inspection. The "affidavit and claim of privilege" of the Secretary of the Air Force is treated as the "pleading setting forth the claim or defense for which intervention is sought". Fed.R.Civ.P. 24(c).

The Air Force interest in the documents here sought arises from the fact that they are copies of component parts of (a) Reports covering the accident in suit made by a Board of Officers of the Air Force under Air Force Regulations 127-4 ("Safety-Investigating and Reporting USAF Accidents/Incidents") and (b) similar Reports covering three other accidents to Air Force planes made by Boeing, it being said by plaintiffs that these three other accidents involved "similar * * * structural failure" (July 8, 1964 letter) to that claimed in the case at bar. The Reports of the Boards of Officers will be called "Board Reports"; the papers sought include copies of parts of Board Reports.

Investigations in the Air Force leading up to Board Reports are made as an important part of a safety program. Their single object is to prevent accidents by finding out the causes of accidents; defense against claims (whether made against the United States or against others) is not an object of these investigations. The following parts of the Regulations are relevant to the present motion (emphasis in original):

"SECTION D — INVESTIGATION

"The Air Force investigates accidents/incidents to determine the causes and to prevent recurrence.

\*　　\*　　\*　　\*　　\*

"24. Purpose and Limitations on the Use of Accident/Incident Reports * * *.

"a. *Privileged Reports.* These reports and their attachments are prepared by, for, or at the direction of, The Inspector General, USAF, and his Deputies, Directors, and Assistants, and *are* therefore, *privileged documents* * * *.

· "(1) Reports and investigations of Air Force accidents and incidents made under provisions of *this regulation, will be used only within the USAF to determine all factors contributing to the mishap for the sole purpose of taking corrective action in the interest of accident prevention* (see par. 25).

"(2) These reports and their attachments will not be used as evidence or to obtain evidence for disciplinary action; as evidence in determining the misconduct or line-of-duty status of any personnel; as evidence before flying evaluation boards; as evidence to determine liability in claims against the U.S. Government; or as evidence to determine pecuniary liability.

"(3) These reports and their attachments will not be released to the Department of Justice, any U.S. attorney, or to any other person for litigation purposes in any legal proceeding, civil or criminal. This prohibition specifically includes any action by or against the United States.

"(4) These reports and their attachments, or copies, and extracts will be used solely within the USAF and will not be appended to or inclosed in any report or document including reports of claims investigations, unless the sole purpose of the other reports or documents is to prevent accidents * * *.

\* \* \* \* \*

"25. Who May Have Access to Accident/Incident Reports and Related Information. Unless specifically authorized by the Chief of Staff, USAF, distribution of accident/incident reports and their attachments/extracts will be limited to those commanders and authorities specified in this regulation * * *.

\* \* \* \* \*

"b. *Requests from Technical Representatives.* The investigating commander may grant an accredited manufacturer's representative or technical representative access to the scene of an accident/incident which involves products of the manufacturer he represents; *he may not be granted visual access to the formal report,* but he may be furnished summaries or extracts of factual technical material (e. g., maintenance records, teardown reports, photographs, historical records, etc.) which relate to the design, performance or manufacturer of the material involved.

\* \* \* \* \*

"d. *Requests from Relatives (or Representatives) of Victims of the Mishap.* The investigating commander, as directed by AFR 190–4, 190–8, and 190–10, will notify relatives of victims of the mishap and follow this with a letter describing the circumstances; this letter will include the date and the location of the mishap and a brief tactful summary of what happened. He will not, in this letter (or in any subsequent correspondence, or in any conversation pertaining to the mishap):

\* \* \* \* \*

"(4) Refer to the existence of the complete accident/incident file, nor will he grant them permission to review it. If such permission is requested, he will explain tactfully that his refusal is not intended personally, but that the report is a privileged document for internal Air Force use only, in the prevention of Air Force accidents.

\* \* \* \* \*

"g. *Requests/Subpoenas from Judicial/Administrative Claims Authorities.* The investigating commander will forward all requests/subpoenas for information/documents for use in litigation/administrative claims against the United States, to The Judge Advocate General, Headquarters, USAF, who will be guided by the following:

"(1) Air Force policy forbids the use of any part of any accident/incident report (or attachment/extract) in any damage claim, lawsuit, or any other legal proceeding, arising out of the accident/incident, regardless of whether such use would be favorable or adverse to Air Force/government interests.

"(2) Air Force policy provides that the sole use of such reports is the prevention of accidents/incidents. Accordingly, no statement, testimony or other data obtained by the investigating board/officer acting under this regulation will be extracted from the record of board proceedings, or used in any investigation convened under any other Air Force regulation, or under the provisions of the Manual of Courts-Martial.

\* \* \* \* \*

"26. Security Classification and Related Matters.

"a. Accident/incident reports will be unclassified \* \* \*. However, unclassified status does not authorize their use outside the Air Force unless they are released as directed in paragraph 25.

\* \* \* \* \*

"c. Do not classify accident/incident statistics (except consolidated reports, such as the Annual Accident Bulletin, and nuclear mishap data); instead, mark them 'Official Use Only'. (see AFR 11-30). They will be used solely for accident prevention

purposes, and released only as directed in paragraph 25."

The Regulations are clearly based on the principle that Board Reports and their component parts are to be used within the Air Force only. Paragraph 24 (a)(1), for example, specifically so states. It is not clear from the wording of paragraph 25, especially when read with paragraph 24(a)(1), whether in a specific case the Chief of Staff could under the Regulations authorize distribution of a Board Report (or parts of it) outside the Air Force itself. It may be a permissible construction that he can do so (see Regulations, paragraph 26).

In any event, the Director of Aerospace Safety, an Air Force officer in the office of The Inspector General of the Air Force, gave to Boeing the papers covered by the present motion. It does not appear when the papers were so given but the Director states that they were given "in the interest of furtherance of prevention of aircraft accidents" (his affidavit of August 3, 1965). From this it is assumed that the papers were given to Boeing in normal course and without reference to the case at bar. The Chief of Staff of the Air Force by affidavit ratifies the acts of the Director in giving the papers to Boeing.

An affidavit for Boeing states that the papers are in the custody ("charge") of the Senior Group Engineer of the Flight Safety Group of the Engineering Department of Boeing and that they have not been made available to "counsel representing the defendant". An attorney from the firm representing Boeing in the case at bar states that he has not seen the papers.

Parts of the Board Report concerning the accident in suit for which privilege is claimed by the Government are as follows (paragraph references are to paragraphs of the affidavit, etc. of the Secretary):

    a. Statements of sixteen named Air Force personnel (para 13);

b. report of "Flying Operations and Witness Group", composed of five Air Force officers and two Boeing employees (para 14);

c. report of the "Structures, Fire and Explosion Group" composed of two civilian employees of the Air Force and one Boeing employee (para 15);

d. report of the "Power Plant, Fuel and Oil Group", composed of two civilian employees of the Air Force and one employee of United Aircraft Corporation (para 16);

e. report of the "Electrical, Electronic or Instrument Systems Group", composed of one civilian employee of the Air Force and one Boeing employee (para 17);

f. report of the "Life Sciences Group", composed of four Air Force officers and one Boeing employee (para 18);

Parts of the Board Report concerning an accident near Monticello, Utah, for which privilege is claimed by the Government are as follows:

g. the "formal report" of the Board, which is the "detailed record of the investigation, and is submitted on AF Forms in the 711 series" (Regulations, para 17(a)(3)) (affidavit, para 20);

h. statements of two named Air Force officers (para 21);

i. report of the "Flying Operations and Witness Group", composed of four Air Force officers and one Boeing employee (para 22);

j. report of the "Structures, Flight Controls, Explosives and Fire Pattern Group", composed of five Air Force personnel and three Boeing employees (para 23);

k. report of the "Pneumatics, Hydraulics and Air Conditioning Group", composed of three Air Force personnel and two Boeing employees (para 24);

l. report of the "Electrical, Electronics and Instrument Group", composed of an Air Force civilian employee and a Boeing employee (para 25);

m. report of the "Power Plant, Fuel and Oil Systems Group", composed of two civilian Air Force employees, one Boeing employee and one employee of United Aircraft Corporation (para 26);

n. report of the "Escape and Survival Group", composed of one Air Force officer and one Boeing employee (para 27):

Parts of the Board Report concerning an accident near Mora, New Mexico, for which privilege is claimed by the Government are as follows:

o. statements of twelve named Air Force officers or non-commissioned officers (para 29);

p. report of the "Flying Operations and Witness Group", composed of five Air Force officers and two Boeing employees (para 30);

q. report of the "Power Plant, Fuel and Oil Systems Group", composed of two Air Force civilian employees and one employee of United Aircraft Corporation (para 31);

r. report of the "Structures, Fire and Explosion Group", composed of three Air Force civilian employees and two Boeing employees (para 32);

s. report of the "Electrical, Electronic and Instrument Group", composed of one Air Force civilian employee and one Boeing employee (para 33);

Parts of the Board Report concerning an accident near Aguilar, Colorado, for which privilege is claimed by the Government are as follows:

t. the "formal report" consisting of four parts (i) History of Flight (ii) Investigation and Analysis (iii) Findings and (iv) Recommendations.

It is important to note that the privilege here asserted is not that relating to diplomatic secrets of state, nor that relating to "military secrets" such as was considered in United States v. Reynolds, 345 U.S. 1, 6, 73 S.Ct. 528, 97 L.Ed. 727 (1953). No claim is made that the papers here sought contain such secrets. The privilege here claimed is on the much broader ground that it exists because the Secretary has determined that it "would be contrary to the public interest" for Boeing to produce the papers for plaintiffs (affidavit of the Secretary, paras 13–18, 20–27, 29–33, 35). The basis for the Secretary's determination is given. Effective investigation of aircraft accidents must be made in order to prevent accidents. In making investigations there is no authority to subpoena witnesses. The Air Force depends on voluntary disclosure of the facts, including voluntary disclosure "by employees of the manufacturers of the aircraft and its components" (para 6); that disclosure is obtained only by assurances that the information will be used only for accident prevention; that part of the program for preventing accidents is the furnishing to the aircraft manufacturers of information developed in investigations because their knowledge and cooperation is required to improve aircraft on the basis of experience; that the "Group Reports" are made after "researches, speculations, conclusions and opinions" (para 11); and that the "formal reports" contain "findings, recommendations, speculations and conclusions which bear not only on the Air Force aircraft investigation program, but on matters of executive policy concerning the operation of the Department of the Air Force" (para 20; see also para 35).

■ As might be expected from a serious and responsible Secretary, the reasons given for the claim of privilege are weighty. It is nevertheless for the Court, rather than for the Secretary, to decide "whether the circumstances are appropriate for the claim of privilege". United States v. Reynolds, above, at 8, 73 S.Ct. at 532.

Whether there is a privilege as broad as is here claimed is an interesting and provocative question. The able memorandum for the Government states (page 10, 73 S.Ct. page 533) that there is a privilege "in any case where the executive policy against disclosure is necessary to the fulfillment of a highly significant government function entrusted to the Executive Branch". There are views for and against a privilege so broadly phrased. The authorities are collected in 4 Moore's Federal Practice (2d ed.) 1543–1626; 8 Wigmore, Evidence (McNaughton rev. 1961) 792–817; Hardin, Executive Privilege in the Federal Courts, 71 Yale L.J. 879 (1962).

From the description in the Secretary's affidavit, it would appear that the papers to which the present claim of privilege is directed are divided into two general classes:

(1) records of facts made in the course of the investigations and contained in the statements of Air Force personnel, group reports and "formal reports" to which the claim of privilege is directed; and, on the other hand,

(2) opinions, speculations, recommendations, and discussions of Air Force policy contained in the same statements, reports, and "formal reports".

It seems reasonable and appropriate that a privilege be sustained as to papers in the class (2) and denied as to papers in the class (1). This is in part at least the reasoning in Machin v. Zuckert, 714 U.S.App.D.C. 335, 316 F.2d 336, cert. denied 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). The Secretary was there required to produce in response to a subpoena, over a claim of privilege, those parts of Board Reports which contained "factual findings of Air Force mechanics who examined the wreckage" (316 F.2d at 340). The privilege was upheld as to "testimony of private parties",

as to any "conclusions" based on such testimony, and as to "any portions of the report reflecting Air Force deliberations or recommendations as to policies that should be pursued" (316 F.2d at 339).

■ In the case at bar, even if there were a privilege covering all the papers had they remained (as in the case just cited) in the possession of the Air Force, the significant fact in the case at bar is that they are not in the possession of the Air Force but in the possession of the defendant in this action, the Air Force having voluntarily turned them over to defendant. Under the circumstances here, it seems clear that no claim of privilege ought to deny to plaintiffs access to records of facts. Any privilege once existing has been waived.

■ An executive privilege, like any others, can be waived. 8 Wigmore, Evidence (McNaughton rev. 1961) 812.

The test for waiver is essentially that of fairness (cf. 8 Wigmore, above, 634–636). In applying this test, account should be taken of the public interest to which the Secretary refers in his affidavit.

The claim of plaintiffs of negligence by defendant in the manufacture of the aircraft must rest in the nature of things on facts known to defendant and to the Air Force, but not known to plaintiffs.

The papers sought relate to the causes of the accident in suit and of claimed similar accidents. They are unique in that they were compiled as soon after the accidents as was reasonably possible. Statements of witnesses, examination of wreckage, photographs, and the like, could not have the same value if taken or made now as those taken or made near the time of the accidents.

The papers were turned over to Boeing by the Air Force. It is accepted that they were not turned over to Boeing to assist in the defense of this action but rather as part of an accident prevention program. But in weighing the public interest, regard must be had for the circumstances known and unknown. The dates when the papers were turned over to Boeing do not appear, nor whether the Air Force knew on those dates of the commencement of this action, nor what restrictions (if any) were placed on the use to be made by Boeing of the papers. It does not appear whether such papers are turned over to all manufacturers whose products are involved in accidents, or only to Boeing. The inference from the Regulations is that they are not given to all manufacturers. The inference from Machin v. Zuckert, above, is that they had not been given to the manufacturer (United Aircraft Corporation) against which suit had there been brought. It does not appear who at Boeing has used the papers, nor whether any such persons will be witnesses at the trial. It is certainly not practicable for the Court to police the situation to see that Boeing makes no use of the papers in the defense of this action. It would seem inevitable that the investigation of the accident in suit and of any similar accident made by the Air Force and by Boeing would be of assistance and advantage to Boeing in the defense of this action.

Under the circumstances here present, it does not seem fair that an executive privilege should be available against discovery and inspection of the papers in the hands of Boeing so far as they deal with facts. Any privilege as to that part of the papers appears to have been waived. (The same balancing of interests as between considerations of fairness and of the public interest leads to a different conclusion as to waiver of privilege respecting opinions, conclusions, etc.; there is not the same necessity for plaintiffs to secure these parts of the papers and at the same time the public interest in sustaining the privilege is greater.)

The Government properly cites in this connection Overby v. United States Fidelity and Guaranty Co., 224 F.2d 158 (5th Cir. 1955). It was there held that any privilege as to reports to the Comptroller of the Currency of examinations of a na-

tional bank was not waived by "putting copies of the documents in the hands of the directors of the bank" (224 F.2d at 163). The reason given was a reason arguably applicable to some extent here: "Only in that way could the documents be effectively used for their whole purpose was the adequate supervision and regulation of national banks." (224 F.2d at 163). But there are distinctions which are not without significance. Some of these are: (a) the reports in Overby remained the property of the Comptroller, (b) the reports were each stamped to show that property interest, the "confidential use" to be made of the report, the restrictions against any disclosure, etc., (c) the reports were regularly furnished to each national bank examined, (d) the confidential classification of the reports had been publicly declared in the Federal Register long before the question arose, and (e) the interests in bank supervision are "delicate and sensitive" (224 F.2d at 161).

To the extent that the papers covered by this motion are records of facts made in the course of the several Air Force investigations, there is "good cause" (Fed.R.Civ.P. 34) for their discovery and inspection. There is no sufficient showing of "good cause", however, for granting any discovery and inspection of that part of the papers which are opinions, speculations, recommendations, or discussions of Air Force policy. The public interest as to such parts outweighs any interest plaintiffs might have in securing the information.

Determination of those parts of the papers which need not be produced by Boeing under this ruling can only be made after a private inspection of the papers by the Court, or by a Special Master appointed for the purpose. Since neither state nor military secrets are claimed, there can be no doubt of the propriety of such inspection. Machin v. Zuckert, above, 316 F.2d at 341.

The motion of the United States to intervene is granted to the extent indicated.

The motion of plaintiffs for discovery and inspection is granted to the extent indicated.

Settle order on notice providing, among other things, for the production by defendant forthwith of all papers as to which the Air Force made no claim of privilege and for the appointment of Pre-Trial Examiner Gregory J. Potter as Special Master to make the determination contemplated by this ruling and to report thereon to the Court.