Grozella **CARR,** Fannie Moore, Vera Walker, Coda M. Fears, Mary Lessie Ewing and Ester Stegall, Plaintiffs-Appellees,

v.

**MONROE MANUFACTURING COMPANY, Defendant,**

**John E. Aldridge and Marvin Wooten, Defendants-Appellants.**

**No. 28397.**

United States Court of Appeals, Fifth Circuit.

Aug. 18, 1970.

H. L. Hutcherson, Walter R. Bivins, Jackson, Miss., for defendants-appellants.

Robert Fitzpatrick, James Robertson, Jackson, Miss., Mr. Robert Patterson, Aberdeen, Miss., for plaintiffs-appellees.

Before JOHN R. BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The plaintiffs are Negroes who brought a class action against the corporate defendant (now Conoco Plastics, Inc.) and against the individual defendants, as officers of the Mississippi Employment Security Commission (MESC), charging Monroe Manufacturing Company with racial discrimination in employment and the individual state officers with racial discrimination in handling

job applications and in job referrals and employment classification, all in violation of Tit. VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

It quickly became obvious to the parties that records of MESC would be among the most relevant evidence in the case. The MESC officials filed a motion in the District Court contending that under Section 7411,[1] Miss.Code of 1942, as amended, the MESC records in question were privileged and confidential and that any employee of the Commission who revealed them was subject to criminal prosecution. They moved the court to hold the records privileged, and to facilitate decision plaintiffs filed a cross-motion for their production. The District Judge granted the cross-motion to produce, and subsequently entered various protective provisions but declined to allow the MESC officials to block out on work application cards the names and addresses of applicants for employment and of employers not parties to the suit. The MESC officers seek to appeal from this latter part of the order.

The District Judge declined to certify the question as an appealable interlocutory order under 28 U.S.C. § 1292(b). The MESC officers then filed this appeal as from an injunction under 28 U.S.C. § 1292(a). Plaintiffs moved to dismiss the appeal, and the motion was carried with the case.

We hold that the order was appealable as a final order, 28 U.S.C. § 1291. No provision of § 1292 allows this appeal.

[T]he following district court orders, entered in aid of a pending civil action and whether directed to a party or non-party, * * * are interlocutory in character, and are non-appealable: an order directing or refusing to direct the issuance of a subpoena, or granting or denying a motion to vacate a subpoena; an order directing or refusing to direct a party or witness to testify or to produce documents in response to a subpoena or a notice; an order granting or denying a motion to suppress a deposition; an order directing or refusing to direct a party to permit inspection under Rule 34; an order requiring or refusing to require a party to submit to a physical examination under Rule 35. Nor is such interlocutory order appealable as an injunction.

6 Moore, Federal Practice, ¶ 54.16 at 147 (2d ed. 1966). As pointed out in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the requirements of a healthy legal system simply do not permit halting the orderly process of a case in midstream to review

---

1. "Information * * * obtained from any individual pursuant to the administration of this act, shall, except to the extent necessary for the proper administration of this act, be held confidential and shall not be published or be opened to public inspection (other than to public employees in the performance of their public duties), in any manner revealing the individual's or employing unit's identity, but any claimant (or his legal representative) at a hearing before an Appeal Tribunal or the Board of Review shall be supplied with information from such records to the extent necessary for the proper presentation of his claim. Any employee or member of the Board of Review or any employee of the commission, who violates any provisions of this section, shall be fined not less than twenty dollars ($20.00), nor more than two hundred dollars ($200.00), or imprisoned for not longer than ninety (90) days, or both.

* * * The commission may afford reasonable cooperation with every agency of the United States charged with the administration of any unemployment insurance law."

Defendants also call our attention on this appeal to § 7412:

"All letters, reports, communications or any other matters, either oral or written, from the employer or employee to each other or to the commission or any of its agents, representatives or employees, which shall have been written, sent, delivered, or made in connection with the requirements and administration of this act, shall be absolutely privileged and shall not be made the subject matter or basis of any suit for slander or libel in any court of the State of Mississippi, unless the same be false in fact and maliciously written, sent, delivered, or made for the purpose of causing a denial of benefits under this act."

incidentally matters which cross the current of the litigation. The relief sought by plaintiffs is not an injunction—all orders of court are mandatory in the sense that they must be obeyed but not all orders of court are injunctions. 6 Moore, ¶ 54.07 at 46. Construing discovery orders as injunctive would do violence to the policies enunciated in Cobbledick. See, e. g., Tracor, Inc. v. Premco Instruments, Inc., 395 F.2d 849 (5th Cir. 1968).

■ However, discovery orders may be appealable where a governmental privilege is asserted and the government is not a party to the suit. Caswell v. Manhattan Fire & Marine Ins. Co., 399 F.2d 417 (5th Cir. 1968); Overby v. United States Fidelity & Guaranty Co., 224 F.2d 158 (5th Cir. 1955). In such cases the asserted governmental interest may be "irretrievably breached" by disclosure, and the government has no remedy on appeal from a final judgment in the original action, even where the matter sought to be discovered is held by one of the parties on the government's behalf. *Overby, supra,* at 162.

■ Applying these principles to this case, to the extent that the appellants asserted the protection of the privilege on their own behalf, denial of the privilege was not appealable in the absence of a finding of contempt or a final judgment. *Cobbledick, supra.* But to the extent that a colorable claim was properly alleged on behalf of the State of Mississippi, the order was appealable.

■■ Governmental privilege is assertible only by the government affected. United States v. Reynolds, 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727, 733 (1953). There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege. * * *

*Id.* at 7–8, 73 S.Ct. at 531, 97 L.Ed. at 733. *Overby, supra,* at 162–163. The claim of privilege was lodged in part by Aldridge, who as MESC chairman administers the Mississippi State Employment Service. Therefore it was properly raised.

The trial court followed the *Overby* requirement of independent judicial examination of the appropriateness of the privilege. On this appeal, defendants suggest that the case by case approach to the privilege is inappropriate in that the Mississippi statutes grant an absolute privilege against disclosure of the employment records here sought.

We turn first to plaintiffs' suggestion that we narrow the statutes by construction. Plaintiffs maintain that § 7412[2] is inapplicable to a claim of testimonial privilege, and that § 7411, providing for confidentiality, would not be construed by the Mississippi courts to grant an absolute privilege for all communications to MESC. They argue persuasively that the privilege contemplated by § 7412 is not a freedom from divulging confidential communications at all, but that the section refers instead to nonliability in slander actions for communications to MESC. *Cf.* Montgomery Ward & Co. v. Harland, 205 Miss. 380, 38 So.2d 771 (1949) (en banc). They cite cases from other jurisdictions interpreting statutes strikingly similar to § 7411 as posing no bar to discovery of otherwise confidential communications in connection with pending litigation of all sorts.[3]

2. See fn. 1, *supra.*

3. Employment security records: Marceau v. Orange Realty, Inc., 97 N.H. 497, 92 A.2d 656 (1952); Powers ex rel. Dept. of Employment Security v. Superior Court, 79 R.I. 63, 82 A.2d 885 (1951); social security (welfare) records: Jones v. Giannola, 252 S.W.2d 660, 663 (Mo.Ct.App.

1952); State ex rel. State v. Church, 35 Wash.2d 170, 211 P.2d 701 (1949); State ex rel. Haugland v. Smythe, 25 Wash.2d 161, 170, 169 P.2d 706, 711 (1946); Bell v. Bankers Life & Cas. Co., 327 Ill.App. 321, 64 N.E.2d 204 (1945). See generally 8 Wigmore, Evidence, § 2377 at 780–791 (McNaughton rev. 1961).

We decline the invitation to divine how the Mississippi courts would construe the statutes.[4] Such a determination is unnecessary to our decision and is better left to the state courts.

We proceed to examine the role of the claimed state evidentiary privilege in this federal case.

■ The Mississippi statute, however construed, does not grant an absolute privilege from disclosure of MESC records in this case. We have recently reviewed the relevant authorities in Garner v. Wolfinbarger, 430 F.2d 1093 [No. 26168, 5th Cir., Aug. 31, 1970]. We there concluded that in any given instance the special federal interest in seeking the truth in a federal question case may require disclosure despite the existence of a state rule holding the same communications privileged. We reaffirm that result here.

■ Our conclusion is buttressed in this case by the policy of American courts noted above to weigh, independently of the evaluation of an executive officer, the need for any asserted governmental privilege. United States v. Reynolds, *supra*; 8 Wigmore, § 2379 at 808–17. *Reynolds* was a state secret case. Later cases have not confined the court's control over governmental privileges to assertions of the state secret privilege. In *Overby* the Comptroller of the Currency asserted that disclosure of reports of examination of national banks would make banks reluctant voluntarily to provide information and thereby undercut the Comptroller's ability to supervise them, an argument strikingly similar to that advanced by defendants here. This court cited *Reynolds* for the proposition that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." 224 F.2d at 163.

■ State cases of governmental privilege seem to follow the same approach. Stratford Factors v. New York State Banking Dept., 10 A.D.2d 66, 197 N.Y.S.2d 375 (1960); Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893 (1952).[5] The granting or withholding of any privilege requires a balancing of competing policies, 8 Wigmore, § 2285 at 527–28. The claim of governmental privilege is no exception; in fact, the potential for misuse of government privilege, and the consequent diminution of information about government available to the public, is one more factor which strongly suggests the need for judicial arbitration of the availability of the privilege. That the need for discovery of communications with a state governmental agency arises in a federal case in no way diminishes the need for an independent weighing by the court of the policies behind the privilege.[6]

---

There is some indication in the record that MESC itself has not applied a rule of absolute privilege to its records. Counsel for the defendants, in discussing a request by plaintiffs for discovery subsequently denied by the trial court, stated: EEOC, under the Federal Act, has specific authority, and by written agreement which was entered into when the Civil Rights Act was first enacted, agreement with this agency, that the EEOC has access to any and all records of MESC relevant to a complaint or charge, relative to charges filed with EEOC.

4. Not all cases deny the privilege. In Smith v. Illinois Valley Ice Cream Co., 20 Ill.App.2d 312, 156 N.E.2d 361 (1959), unemployment compensation records and testimony as to their contents were both excluded at trial on the strength of a statute which clearly rendered them inadmissible.

5. Note also the approach of several state courts cited *supra*, fn. 3, in narrowing state confidentiality statutes by construction so as to permit disclosure in court proceedings.

6. Deference to legislative judgment in this sensitive area does not require that a privilege be granted wherever a legislative policy favors confidentiality. For cases limiting such statutes by construction, see fn. 3, *supra*. In *Overby* the Comptroller's claim of privilege rested on specific statutes, and on the general statutory authority for the protection of records by regulation, and the informers' privilege. This court did not distinguish among possible bases for the Comptroller's authority to claim the privilege. We read *Reynolds*

Making even more compelling the need for judicial evaluation of the availability of the privilege is the fact that this is a suit against the highest official of the very government agency asserting the privilege. In such cases there is a special danger in the government official having the power to define the scope of his own privilege, free of supervision by the courts. As one pre-*Reynolds* court put it, in a similar suit:

> [I]nasmuch as * * * the alleged actionable deviation from official conduct by the defendants is brought in issue by the answer * * *, it is eminently appropriate that all relevant documents which elucidate those vital issues * * * should not be withheld from the court. To rule otherwise in the absence of controlling authority would do violence to the court's duty to search for the truth and would be inimical to the traditional concept of [discovery]. * * *

We conclude by holding that to sustain the assertion of privilege of concealment under the specific situation before the court would be tantamount to abdicating an inherent judicial function of determining the facts upon which the admissibility of evidence in a case depends.

Zimmerman v. Poindexter, 74 F.Supp. 933, 935, 936 (D.Hawaii 1947); *cf.* Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., 55 F.Supp. 65 (W.D. Ky.1944).

Where a government asserts a privilege not existent in the common law but based on unique considerations of government policy, the trial court properly should consider the assertion of privilege as part of the good cause requirement, balancing competing policies.

Mitchell v. Bass, 252 F.2d 513 at 517 (8th Cir. 1958). A court of appeals may reverse for abuse of discretion. *Id.* at 518–519. Defendants ask us to second-guess the trial court and find that blocking out the names of nonparties on application cards would not significantly reduce the scope of plaintiffs' discovery, and furthermore that revelation of those names would seriously compromise the effectiveness of MESC.

The trial court entered two orders relative to the privilege. The first denied, subject to later renewal of the motion, discovery of jobseeking records concerned solely with nonparty employers. The same order granted discovery of various other MESC records, including application cards of all those referred to Conoco.[7] MESC, at a second hearing, requested through defendants' counsel that it be allowed to place tape on application cards over the names of all applicants referred to Conoco except named plaintiffs, and all employers except Conoco to whom referrals were made. The District Court declined to so limit its first order, but ordered instead extensive protective devices to assure that neither the original records nor copies would reach any nonparty, and that the parties and their counsel would use the records only for purposes of the instant litigation.

Counsel below, speaking on behalf of MESC, strenuously contended that the names of nonparties should have been blocked out because their identity was "not essential" (on appeal, "not relevant") to a trial on the issues. It was urged that even without specific names, the application cards would reveal any existing pattern of discrimination. And it was suggested that strict and complete freedom from disclosure [8] was necessary

---

to say that "in the final analysis, the court and not the executive officer is to determine the validity of the claim of privilege." 224 F.2d at 163.

7. The trial court specifically found that "the policy of non-disclosure of employment records declared by the Mississippi Employment Security Law (Mississippi Code Section 7411) is outweighed in

this case by the need of the plaintiffs for access to information in the files of MESC, [and] that the disclosure of such otherwise privileged information is necessary for the just disposition of this cause."

8. Except in MESC administrative hearings, as provided by the statute.

to promote the full candor necessary to an effective job referral system. With particular reference to employers, the fear was expressed that users of MESC might either forego its services or temper communications with it for fear that their words might one day reach the public eye.

The trial court was justified in finding these possible side effects were outweighed by the value of disclosure in this instance. The suit was brought as a class action; determination of the identity of the other members of the class to whom effective relief might be granted may be difficult or impossible unless applicants' names are available from the employment records.[9] Instances of or evidence of discriminatory job placement may be available through interviews with other unsuccessful applicants. The experience, in referrals to other employers, of applicants referred to Conoco may shed some light on whether MESC is engaging in overall discriminatory referral practices as alleged. The reasons favoring disclosure are especially compelling in light of the nature of the case. The trial court said from the bench:

> [I]n view of the stated policy of the law, that is, to eradicate racial discrimination, I believe the need for this information by the plaintiffs would overcome any benefits that would be derived by the people who furnished this information. * * *

The potential harm from disclosure of any communication subject to a privilege must be weighed against the benefits of disclosure. The possibility of harm to an administrative program and the invasion of privacy of persons who seek employment cannot be ignored. But in nearly every case involving similar state statutes, *supra* n. 3, the balance has been struck in favor of disclosure in court proceedings. In determining the availability of privilege a court may properly consider the possibility of entering protective orders, and in this instance the District Court did so. We are of the opinion that the District Court, in balancing the competing interests, did not abuse its discretion.

As a corollary, a trial court is duty-bound, where it orders production of documents in which there are strong policy reasons against public disclosure, to limit the availability and use of those documents and their contents by carefully drawn protective provisions. See, e. g., Baim & Blank, Inc. v. Bruno-New York, Inc., 17 F.R.D. 346 (S.D.N.Y. 1955). The court below entered extensive protective orders circumscribing access to and copying and use of the documents. The defendants state that some of the documents contain data concerning employment applicants, obtained in personal interviews and elsewhere, of a nature that would be embarrassing or denigrating to reveal—for example, physical or emotional handicaps, diseases disqualifying an applicant for certain employment, dissatisfaction with present employment. MESC can review its records and in any instance where such information appears can seek from the District Judge further protective orders that will give appropriate regard to the privacy and the dignity of the individuals affected.

Affirmed.

9. Prior to August 1, 1967 MESC record did not reflect the race of applicants. In order to determine race and consequently the possibility of discrimination, plaintiffs may need to seek out individual applicants.