638 F.2d 873
 25 Fair Empl.Prac.Cas. 653,
25 Empl. Prac. Dec. P 31,614,
7 Fed. R. Evid. Serv. 1578
Bobby L. BRANCH, Plaintiff,
v.
PHILLIPS PETROLEUM COMPANY, Defendant-Appellee,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Movant-Appellant.
 No. 80-2015
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit A
 March 5, 1981.
 Leroy D. Clark, Gen. Counsel, E.E.O.C., Constance L. Dupre, James N. Finney, Associate Gen. Counsel, W. Sherman Rogers, Vella M. Fink, Washington, D. C., for movant-appellant.
 John B. Abercrombie, Joseph R. Weeks, Houston, Tex., Gordon Cooper, Houston, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.
 CHARLES CLARK, Circuit Judge:
 
 
 1
 This appeal arises out of a Title VII suit brought by Bobby L. Branch against his employer, Phillips Petroleum Company, appellee herein. Phillips sought, obtained, and served a subpoena on the custodian of records for the Equal Employment Opportunity Commission, Harriet Joan Ehrlich, directing her to produce for inspection and copying any and all records related to any charge of discrimination filed by Branch. The Commission, which is not a party to this lawsuit, resisted the subpoena, claiming that some of the documents sought by Phillips were privileged. The district court entered an order compelling compliance with the subpoena, and the Commission appeals. No party requests oral argument. See Fifth Circuit Local Rule 18. For the reasons stated below we vacate and remand.
 
 I. FACTS
 
 2
 In March, 1975, Branch filed a charge with the Equal Employment Opportunity Commission alleging that Phillips had discriminated against him on account of his race when his employer suspended him. He also charged that Phillips had discriminated against him, other blacks, and Mexican-Americans in its hiring, promotion, and demotion practices. The Commission initially determined that there was reasonable cause to believe that the charge was true, but after making some conciliation efforts it rescinded that determination and found no reasonable cause. Then, in August, 1977, Branch filed a second charge against Phillips, alleging racial discrimination in its failure to promote him. At the time of the events giving rise to this appeal, the Commission had yet to make an assessment of the merits of this second charge.
 
 
 3
 Subsequently, Branch brought this employment discrimination suit against Phillips based upon the conduct alleged in his first charge of discrimination filed with the EEOC. Branch claimed that he had been discriminatorily suspended and demoted because of his race and that Phillips had established a pattern and practice of racial discrimination. During his deposition testimony, Branch stated that he had filed charges of discrimination with the EEOC against two of his prior employers. He also admitted that he had filed his second charge of racial discrimination against Phillips.
 
 
 4
 Phillips then obtained the subpoena which is the subject of this appeal. The subpoena was served on Harriet Joan Ehrlich, director of the Commission's Houston district office, and commanded her to testify at the taking of her deposition at 11:30 A.M. on July 19, 1979, the very day on which it was served. The subpoena also directed Ehrlich to bring for inspection and copying
 
 
 5
 any and all files, records, papers, billings, personnel and/or employment records, including correspondence of any claims and other reports submitted by and any way related to BOBBY L. BRANCH, and any and all files related to any charge of discrimination filed by BOBBY L. BRANCH against any employer or other individual.
 
 
 6
 Ehrlich responded to the subpoena by producing records related to Branch's first charge against Phillips. However, in written responses to questions accompanying the subpoena, she explained that certain records covered by the terms of the subpoena had been excluded pursuant to Section 83.6 of the EEOC Compliance Manual. Because this provision prohibits their disclosure, Ehrlich withheld information connected with charges filed by Branch against other employers, agency memoranda containing staff evaluations and recommendations, and information related to conciliation efforts made by the Commission. In addition, the Commission did not reveal any information connected with Branch's second charge filed against Phillips.
 
 
 7
 Phillips' attempts to resolve the dispute informally were unavailing. Finally, after nearly a year had elapsed, Phillips filed a motion to compel compliance with the subpoena. In response, the Commission moved to have the subpoena quashed on the ground that disclosure of the requested documents was prohibited by the confidentiality provisions of Title VII, 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e). The district court issued an order without reasons compelling the Commission to produce the records demanded in the subpoena,[1] and the Commission appeals.
 
 
 8
 II. APPEALABILITY OF THE DISTRICT COURT'S ORDER
 
 
 9
 Initially, Phillips contends that the court is without jurisdiction to entertain this appeal. Under 28 U.S.C. § 1291, the courts of appeal "have jurisdiction of appeals from all final decisions of the district courts of the United States...." Phillips relies upon the well-established general principle that most orders requiring or denying discovery, including those issued in connection with a subpoena, are not "final decisions" within the meaning of section 1291 and, hence, are not immediately appealable. See, e. g., United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). See generally 4 Moore's Federal Practice P 26.83(3) (2d ed. 1979). Ordinarily, the subpoenaed party must either comply with the terms of the subpoena or refuse to do so and contest its validity if he is subsequently cited for contempt for his refusal to obey. To permit immediate appeal from orders compelling compliance or denying a motion to quash would open the door to multiple appeals, thereby offending the policy against "piecemeal litigation" embodied in the finality rule. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 634, 89 L.Ed. 911, 916 (1945).[2] Phillips maintains that an application of these principles makes the district court's order unappealable at present.
 
 
 10
 In response, the Commission relies upon an exception to the general rule which has evolved in this circuit. This exception allows immediate appeal by a governmental entity where the government is not a party to the lawsuit and asserts some governmental privilege to resist release of the subpoenaed material. See, e. g., Cates v. LTV Aerospace Corp., 480 F.2d 620, 622 (5th Cir. 1973); Fears v. Burris Manufacturing Co., 436 F.2d 1357, 1360 n.2 (5th Cir. 1971); Carr v. Monroe Manufacturing Co., 431 F.2d 384, 387 (5th Cir. 1970), cert. denied sub nom. Aldridge v. Carr, 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971); Overby v. U. S. Fidelity & Guaranty Co., 224 F.2d 158, 162 (5th Cir. 1955).
 
 
 11
 These arguments were first advanced by the parties to another panel of this court when Phillips filed a motion to dismiss the appeal. In an order issued without opinion, the panel denied Phillips' motion. That disposition by the prior panel is binding upon this panel. United States v. Alfrey, 620 F.2d 551 (5th Cir. 1980); Trunkline Gas Co. v. FERC, 608 F.2d 582 (5th Cir. 1979). Accordingly, Phillips' contention must be rejected.
 
 
 12
 Yet, the theory upon which that motion presumably was denied may be unsound in light of the Supreme Court's decision of United States v. Ryan, supra. The Supreme Court has acknowledged only a limited number of exceptions to the general rule that pre-contempt disclosure orders are not appealable. See United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (permitting pre-contempt appeal by the President of the United States in order to avoid unnecessary constitutional confrontation between two branches of government); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (permitting appeal from an order that finally determines rights which are collateral to those asserted in the action, are too important to be denied review, and which cannot await final judgment because they would be irreparably lost); Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (permitting appeal where denial of immediate review would render impossible any review of the party's claims). All of the recognized exceptions are extremely narrow, and the lower courts have been exceedingly chary of enlarging their scope. See, e. g., In re Attorney General of United States, 596 F.2d 58 (2d Cir. 1979), cert. denied, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979) (refusing to extend Nixon exception to Attorney General); North Carolina Ass'n of Black Lawyers v. North Carolina Board of Law Examiners, 538 F.2d 547 (4th Cir. 1976) (refusing to extend Cohen exception beyond claims of true privilege).
 
 
 13
 However, before Ryan was decided in 1971, this circuit carved out another exception allowing immediate appeal by the government when it was not a party to the action and was asserting some governmental privilege. In cases like Overby, where disclosure is sought from a non-governmental party who has custody of the documents, application of this governmental privilege exception appears to be no more than a simple variation of the rule developed by the Supreme Court in Perlman.[3]
 
 
 14
 But extending the governmental privilege exception to cases, like Cates, in which the government is both holder of the privilege and custodian of the subpoenaed material introduces a problem. The rationale supporting this application of the rule has been expressed in the following terms:
 
 
 15
 The theory of allowing an appeal rests on the proposition that forced disclosure would irretrievably breach the claim of privilege and render an appeal from final judgment meaningless....
 
 
 16
 Cates, 480 F.2d at 622. See Carr, 431 F.2d at 387. This line of reasoning is similar to the argument advanced and rejected by the Supreme Court in Ryan. Ryan claimed that he would be forced to undertake a substantial burden in complying with the subpoena unless he could effect an immediate appeal, but the Court rejected his argument.
 
 
 17
 We think that respondent's assertion misapprehends the thrust of our cases. Of course, if he complies with the subpoena he will not thereafter be able to undo the substantial effort he has exerted in order to comply. But compliance is not the only course open to respondent. If, as he claims, the subpoena is unduly burdensome or otherwise unlawful, he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appellate review.
 
 
 18
 402 U.S. at 532, 91 S.Ct. at 1582, 29 L.Ed.2d at 88 (footnote omitted and emphasis supplied). The clear implication of the reasoning in Ryan is that the government's interest in maintaining some privilege of non-disclosure is no more irretrievably breached than the private party's energies irrevocably expended. In each case, the subpoenaed party has an alternative avenue through which to vindicate its rights without sacrificing the interest it seeks to protect. The Ryan court based its decision on "the necessity for expedition in the administration of the criminal law...." 402 U.S. at 533, 91 S.Ct. at 1582, 29 L.Ed.2d at 88. The institutional pressure caused by civil litigation dictates the same result in the civil context. Nevertheless, Cates clearly extends the right of immediate appeal to the government even when it is itself in custody of the subpoenaed material. Such is the case now before us. The Commission has the right of immediate appeal from the district court's order compelling compliance with its subpoena.
 
 III. GOVERNMENTAL PRIVILEGE
 
 19
 We turn now to the merits of the Commission's appeal. The subpoena issued against the EEOC commanded it to disclose all records and documents connected with any charge of discrimination filed by Branch. On its face, the subpoena describes matter subject to discovery if not privileged. Fed.R.Civ.P. 26(b) (1). But the Commission claims that the confidentiality provisions of Title VII and its own regulations create a privilege as to some of the subpoenaed documents. Accordingly, it withheld three categories of material: all information related to charges filed by Branch against other employers; non-factual materials associated with the Commission's conciliation efforts; and intra-agency memoranda, reports, and recommendations. We conclude that each of these three classes of materials are privileged.
 
 
 20
 The Commission asserts the Government's "executive" or "official information" privilege. This privilege not only shields facts or communications received by public officials in the performance of their duties relating to state secrets or national security, see United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), but also less secret kinds of official information disclosure of which would be harmful to some governmental interest. Information expressly declared by statute to be confidential is so privileged. See generally McCormick, Handbook of the Law of Evidence, §§ 106-109 (2d ed. E. Cleary 1972); 8 J. Wigmore, Evidence § 2378 (McNaughton Rev. 1961).
 
 
 21
 The Commission argues that the confidentiality provisions of Title VII expressly create a privilege against disclosure of charges filed by Branch against other employers and information connected with those charges. Section 706(b) of Title VII specifically provides that "(c)harges shall not be made public by the Commission" and provides a criminal penalty for any person who violates its terms.[4] 42 U.S.C. § 2000e-5(b). Senator Humphrey, who introduced the compromise amendment that was ultimately adopted by Congress, explained the purpose of the non-disclosure provisions in the following way:
 
 
 22
 It should be noted that this is a ban on publicizing and not on such disclosure as is necessary to the carrying out of the Commission's duties under the statute.... The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but rather is aimed at the making available to the general public of unproven charges.
 
 
 23
 110 Cong.Rec. 12723 (1964). Recognition of the congressional purpose underlying enactment of Title VII's non-disclosure provisions has led this court to conclude that they "were not intended to prohibit the Commission from divulging to the parties involved or their counsel information obtained by the Commission during its investigation of a claim of unlawful discrimination." H. Kessler & Co. v. EEOC, 472 F.2d 1147, 1152 (5th Cir. 1973) (en banc) (emphasis supplied). The court also acknowledged that the Commission could erect those barriers to disclosure necessary for the performance of its statutory functions and to prevent public revelation of the information which it obtained. Id.
 
 
 24
 Phillips argues that the reasoning in Kessler would permit disclosure in this case. Because it is a party to a pending Title VII lawsuit, Phillips maintains that it is not "the public" within the meaning of section 706(b). This contention is without merit. That the non-disclosure provisions of the Act were not intended to apply to the immediate parties does not imply that they were also not intended to apply to any Title VII litigant. Phillips' posture vis a vis other employers against whom Branch has brought charges is not substantially different from that of any other member of the public. Disclosure to Phillips of the details of Branch's charges against his prior employers by the Commission well might undermine the purpose of section 706(b) if potential parties feared that their filings could be the subject of discovery.
 
 
 25
 Phillips also contends that the official privilege created by section 706(b) is not absolute, that it can be overridden if individual need for the material outweighs the harm resulting from non-disclosure. Phillips asserts material would be valuable to impeach Branch's credibility if it disclosed that he regularly files meritless charges against employers. This possibility is insufficient to overcome the congressional policy embodied in section 706(b).[5]
 
 
 26
 The second category of material sought by Phillips consists of information obtained by the Commission during its efforts to conciliate Branch's charges against it. The EEOC claims that section 706(b) also makes this information privileged. Section 706(b) requires the Commission to employ "informal methods of conference, conciliation, and persuasion" to resolve any claim of unlawful discrimination. It then goes on to provide that "(n)othing said or done during and as a part of such informal endeavors may be made public by the Commission ... or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b).
 
 
 27
 Once again, Phillips maintains that it is not the "public" within the intention of the statute. Although Kessler simply held that section 709(e) of the Act does not prohibit disclosure to the charging party or his attorney information obtained by the Commission during the course of its investigation of a complaint, Phillips insists that its reasoning justifies disclosure to the parties of information obtained by the Commission during its conciliation endeavors.
 
 
 28
 We cannot accept this analysis. The obvious purpose of the statute's prohibition on revealing statements made or actions taken during the Commission's conciliation efforts is to promote the congressional policy favoring unlitigated resolution of employment discrimination claims. Cooperation and voluntary compliance are the preferred means for the elimination of unlawful employment discrimination, and Congress created the Commission and established an informal dispute resolution procedure to accomplish this goal.
 
 
 29
 (I)t is clear that Congress placed great emphasis upon private settlement and the elimination of unfair practices without litigation on the ground that voluntary compliance is preferable to court action. Indeed, it is apparent that the primary role of the EEOC is to seek elimination of unlawful employment practices by informal means leading to voluntary compliance.
 
 
 30
 Hutchings v. United States Industries, 428 F.2d 303, 309 (5th Cir. 1970) (citations omitted). See Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017-18, 39 L.Ed.2d 147, 155 (1974); United States v. Allegheny-Ludlum Industries, 517 F.2d 826, 846-48 (5th Cir. 1975). However, the prospect of disclosure or possible admission into evidence of proposals made during conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII.[6] Therefore, disclosure of conciliation materials, even to the parties, would discourage negotiated settlement and frustrate the intention of Congress.
 
 
 31
 The Commission's regulations and policies manual make no exception for disclosure of conciliation materials to opposing parties. See C.F.R. § 1601.26(a); EEOC Compliance Manual § 83.6(f).[7] The manual does, however, provide for disclosure of purely factual information about the merits of a charge, gleaned by the Commission during its conciliation endeavors. The Commission makes such material available to the parties for their use in litigation.[8]
 
 
 32
 To the extent that the district court required disclosure of proposals and counter-proposals of compromise made by the parties during the Commission's efforts to conciliate Branch's charges against Phillips, its disclosure order was in error. To the extent that the order included purely factual material related to the merits of Branch's charge, it was not.
 
 
 33
 The final category of material covered by the district court's order includes intra-agency memoranda, reports of agents and subordinates, staff evaluations, and advisory recommendations. Unlike the first two categories of subpoenaed material, no express statutory privilege exists to prevent public disclosure of these documents. Instead, the Commission appeals to the common law version of the official information privilege protecting against disclosure of materials that would be "injurious to the consultative functions of government...." Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958), quoted in National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29, 47 (1975). In this form, the privilege has often been applied to shield from disclosure those documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Carl Zeiss Stiftung v. E. B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C.1966), aff'd 384 F.2d 979 (D.C.Cir.1967) cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). See McClelland v. Andrus, 606 F.2d 1278 (D.C.Cir.1979); Freeman v. Seligson, 405 F.2d 1326 (D.C.Cir.1968); Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600 (5th Cir. 1966); Olson Rug Co. v. NLRB, 291 F.2d 655 (7th Cir. 1961); 8 Wright & Miller, supra, § 2019 at 167-69 (citing cases).
 
 
 34
 This application of the official privilege is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye. Government officials would hesitate to offer their candid and conscientious opinions to superiors or co-workers if they knew that their opinions of the moment might be made a matter of public record at some future date. "There is a public policy involved in this claim of privilege for this advisory opinion the policy of open, frank discussion between subordinate and chief concerning administrative action." Kaiser Aluminum & Chemical Corp., 157 F.Supp. at 946. See generally NLRB v. Sears, Roebuck & Co., 421 U.S. at 150-52, 95 S.Ct. at 1516-17, 44 L.Ed.2d at 47 (1975); United States v. Nixon, 418 U.S. at 705, 94 S.Ct. at 3106, 41 L.Ed.2d at 1062 (1974); EPA v. Mink, 410 U.S. 73, 86-87, 93 S.Ct. 827, 835-36, 35 L.Ed.2d 119, 131 (1973).
 
 
 35
 Nevertheless, the official privilege is not absolute. Manifestly, the ultimate goal of the official privilege is to protect the integrity of the administrative decisionmaking process. Accomplishment of this purpose, however, would not be frustrated by disclosure of those memoranda consisting solely of factual material or of purely factual material contained within deliberative memoranda and separable from its context. Thus, the courts have uniformly held that such purely factual information is not protected by the privilege. See, e. g., Machin v. Zuckert, 316 F.2d 336 (D.C.Cir.1963), cert. denied, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124; Boeing Airplane Co. v. Coggeshall, 280 F.2d 654 (D.C.Cir.1960). See generally EPA v. Mink, 410 U.S. at 87-88, 93 S.Ct. at 836, 35 L.Ed.2d at 132. The privilege, therefore, only extends to documents which are a part of the deliberative process of government.[9]
 
 
 36
 The Commission's disclosure rules are consistent with these principles. The EEOC Compliance Manual directs Commission employees to withhold those deliberative memoranda which contain staff impressions, evaluations, and recommendations related to the merits of a charge and proposed action by the Commission.[10] To the extent that the documents withheld from Phillips by the Commission are internal working papers in which opinions are expressed, policies are formulated, and actions are recommended, they are privileged. To the extent that the documents contain purely factual material in a form that can be separated without compromising the privileged portions of the documents, the material is not privileged and is subject to discovery.
 
 
 37
 Phillips also claims that the Commission has not properly invoked the privilege against disclosure of conciliation materials and intra-agency memoranda.
 
 
 38
 There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration of that officer.
 
 
 39
 United States v. Reynolds, 345 U.S. at 7-8, 73 S.Ct. at 532, 97 L.Ed. at 733. The purpose of this procedural requirement is to insure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application. However, there has been sufficient compliance by the Commission to satisfy this goal. Ehrlich is director of the Commission's Houston district office and custodian of the records subpoenaed by Phillips. She refused to disclose the subpoenaed materials only after consulting with the office of the General Counsel in accordance with EEOC regulations. See 29 C.F.R. §§ 1610.30-1610.36. Moreover, Ehrlich made the Commission's objections to disclosure and its basis for them known to the court in written responses to questions accompanying the subpoena itself. Therefore, Phillips' objection is without merit.
 
 
 40
 Finally, there is one category of documents over which no dispute remains. When served with Phillips' subpoena, the Commission also declined to release information concerning Branch's second charge of discrimination against Phillips.[11] On appeal the Commission now concedes that the present lawsuit encompasses the allegations made in the second charge. Thus, it asserts no privilege to immunize it from discovery and informs the court that it has notified counsel for Phillips of its willingness to disclose it. Accordingly, that much of the district court's order which compels the EEOC to divulge unprivileged material connected with Branch's second charge against Phillips is affirmed.
 
 
 41
 However, our conclusion that certain classes of materials are privileged does not completely dispose of the case. The district court must apply these principles to the particular documents withheld by the Commission. The EEOC concedes its obligation to disclose purely factual information obtained during the conciliation process or contained within its internal documents but asserts that Phillips has already received all the information to which it is entitled. However, this is a determination that must be made by the court rather than the administrative agency asserting the privilege. See United States v. Reynolds, 345 U.S. at 7-8, 73 S.Ct. at 531, 97 L.Ed. at 733 (1953); Carr, 431 F.2d at 387-89; Overby, 224 F.2d at 162-63; McCormick, supra, § 110 at 235; Wigmore, supra, § 2379 at 809-10.
 
 
 42
 Consistent with this opinion, the district court should determine which specific documents or portions of documents withheld by the Commission are privileged. Furthermore, on remand the district court need not necessarily make an in camera inspection of all the subpoenaed material. The "agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the District Court that the documents sought fall clearly beyond the range of material" to which Phillips would be entitled. EPA v. Mink, 410 U.S. at 94, 93 S.Ct. at 839, 35 L.Ed.2d at 839.
 
 
 43
 The order appealed from is vacated, and the case is remanded for further proceedings not inconsistent with this opinion. Each party shall bear its own costs.
 
 
 44
 VACATED AND REMANDED.
 
 
 
 [1]
 The district court's original order compelling the Commission to produce all records demanded in the subpoena erroneously stated that Ehrlich had been served on July 17, 1979, and that the Commission had not attempted to quash or stay the subpoena. The Commission subsequently moved for reconsideration, and the district court denied its motion
 
 
 [2]
 The policy of finality is grounded in practical concerns of judicial administration. Justice Frankfurter elaborated these considerations as follows:
 Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.
 Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783, 784 (1940).
 
 
 [3]
 Under the Perlman doctrine, when a subpoena is directed to a person who has custody of material as to which another person may claim a privilege of non-disclosure, the person who holds the privilege may seek immediate review of the disclosure order. The justification for permitting immediate appeal under these circumstances is that the privilege-holder has no power to compel the custodian of the material to risk a contempt citation for his refusal to comply with the court's order. Thus, denying the holder of the privilege the right to immediate review would leave him "powerless to avert the mischief of the order," Perlman, 247 U.S at 13, 38 S.Ct. at 419, 62 L.Ed. at 955, and "would practically defeat the right to any review at all." Cobbledick, 309 U.S. at 324-25, 60 S.Ct. at 541, 84 L.Ed. at 785 (footnote omitted). See generally National Super Spuds, Inc. v. New York Mercantile Exchange, 591 F.2d 174, 177-81 (2d Cir. 1979)
 
 
 [4]
 Section 706(b) provides, in pertinent part, as follows:
 Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission.... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both.
 42 U.S.C. § 2000e-5(b).
 
 
 [5]
 We do not decide whether Phillips may discover from Branch himself Branch's other claims of discrimination. We hold only that Phillips' need for this information does not override the government's interest in non-disclosure
 
 
 [6]
 The purpose of the statute is similar to that embodied in the traditional evidentiary rule making offers of compromise and settlement inadmissible. See, e. g., Fed.R.Evid. 408
 
 
 [7]
 Section 83.6(f) of the EEOC's Compliance Manual provides in part as follows:
 Conciliation Materials Remove information in the case file which concerns the Commission's attempts to settle the charge by the informal methods of conference, conciliation and persuasion. But see also Section 1601.26(b) of the Commission's Procedural Regulations which provides that factual information obtained by the Commission during the course of such informal endeavors may be disclosed provided that the factual information was otherwise obtainable by the Commission under its authority in Section 709 of Title VII.
 The subsection then enumerates specific EEOC forms which should be expunged from the case file prior to any disclosure.
 
 
 [8]
 See 29 C.F.R. § 1601.26(b); EEOC Compliance Manual § 83.6(f), supra note 7
 
 
 [9]
 Although this case arises in the ordinary common law discovery context, it is worth noting that the Freedom of Information Act exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has determined that the factual material/deliberative process dichotomy applicable for the official privilege is also applicable for cases decided under the FOIA. See EPA v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)
 
 
 [10]
 The EEOC Compliance Manual instructs Commission staff members who disclose information from case files in the following terms:
 Intra-Agency and Inter-Agency Memoranda Remove the Investigator's Memorandum. Remove all memoranda, notes and other documents prepared by Commission attorneys or received from other governmental agencies which contain recommendations or mental impressions as to strategy for settling the case or litigation. Remove all memoranda or notes from the Regional Office of the General Counsel, from Office of General Counsel and from the Department of Justice.
 EEOC Compliance Manual § 83.6(d).
 
 
 [11]
 The Commission explains its failure to disclose the information connected with Branch's second charge by pointing out that Phillips' subpoena was served upon Ehrlich on the same day set for production and that it could not know the scope of this lawsuit. In addition, Phillips' motion to compel compliance made no reference to the second charge