# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2011

No. 10-20291

Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant

v.

PHILIP SERVICES CORPORATION, now known as Philip Holdings, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DeMOSS, and PRADO, Circuit Judges.

HAROLD R. DeMOSS, JR., Circuit Judge:

This appeal asks us to determine whether a party may sue for breach of an alleged oral contract reached during Title VII's conciliation process. Because such action is contrary to the relevant statute and frustrates the purposes of Title VII, we affirm the district court.

## I.

Nine employees of Appellee Philip Services Corporation (PSC) filed charges with Appellants Equal Employment Opportunity Commission (the Commission) against PSC, alleging racial discrimination. After finding

No. 10-20291

reasonable cause to support the charges of discrimination, the Commission initiated the conciliation process with PSC as required by Title VII. *See* 42 U.S.C. § 2000e-5(b). On February 23, 2009, the parties participated in a conciliation conference and subsequently exchanged several e-mails negotiating settlement terms. Approximately two weeks after the conciliation process was initiated, PSC withdrew from the negotiations. The Commission asserts that it was reducing the parties' verbal agreement to writing at the time PSC withdrew from the conciliation process.

On May 28, 2009, the Commission filed a breach of contract action with the district court, seeking specific enforcement of the terms of the alleged oral conciliation agreement. In support of its complaint, the Commission submitted a declaration asserting that the parties had reached an agreement on injunctive and monetary relief. The declaration further alleged that a written conciliation agreement was presented to PSC and that PSC verbally agreed to the terms. PSC filed a motion to dismiss or, alternatively, a motion for summary judgment. PSC disputed that a final agreement had been reached. PSC asserted that shortly after the conciliation process began, it withdrew from the negotiations because two employees wanted additional monetary relief and PSC was not prepared to settle the claims with less than all nine employees; none of the employees had executed final releases; and the Commission had not yet provided PSC with a proposed written agreement.

The magistrate judge issued a recommendation that the district court grant PSC's motion to dismiss on the grounds that Title VII's confidentiality provision was an "insurmountable impediment" to the Commission's attempts to enforce the oral conciliation agreement. On February 25, 2010, the district court adopted the magistrate judge's recommendation and dismissed the Commission's suit, finding that "the plain language of the statute makes it clear that there are no exceptions" to Title VII's prohibition against using conciliation

2

No. 10-20291

material in subsequent proceedings. On appeal, the Commission asks this court for a remand to the district court for discovery and a determination of whether the parties had entered into an oral contract.

## II.

We review de novo a district court's determination on a motion to dismiss under Rule 12(b)(6), accepting "all well-pleaded facts as true [and] viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quotations and citations omitted).

Title VII requires that the Commission "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). The Commission may file a civil action only if it has first been unable to secure a conciliation agreement from the employer. *See E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 468 (5th Cir. 2009); *see also* 42 U.S.C. § 2000e-5(f)(1). Title VII provides that "[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b). Title VII imposes sanctions for such disclosure, subjecting individuals who make public information in violation of this section to a fine "not more than $1,000 or imprison[ment] for not more than one year, or both." *Id.*

The Commission argues that this court should read the statute as prohibiting disclosure only in subsequent proceedings on the merits of the charge, and that a suit to enforce an oral conciliation agreement is not a subsequent proceeding within the meaning of the statute. The Commission asserts that this interpretation is consistent with the legislative history and with Congress's goal of encouraging settlement of employment disputes through conciliation. For the following reasons, we disagree.

No. 10-20291

**A.**

By its plain language, the statute does not carve out any exceptions to its prohibition against disclosure of conciliation material. *See* 42 U.S.C. § 2000e-5(b) ("*Nothing* said or done and as a part of such informal endeavors may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned." (emphasis added)). The Commission's own disclosure rules are nearly identical to the statute. *See* 29 C.F.R. § 1601.26(a) ("*Nothing* that is said or done during and as part of the informal endeavors of the Commission to eliminate unlawful employment practices by informal methods of conference, conciliation, and persuasion may be made a matter of public information by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." (emphasis added)). The Commission would have us read an exception into the statute that is not contemplated by its plain terms, and we will not presume that Congress intended there to be an exception to or limitation of the meaning of the statute when it is unambiguous. *See, e.g., In re Bell Petroleum Servs., Inc.*, 3 F.3d 889, 919 (5th Cir. 1993). "Information expressly declared by statute to be confidential is so privileged." *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 879 (5th Cir. Unit A Mar. 1981) (citation omitted). An inquiry into whether the parties entered into an oral conciliation agreement violates the clear prohibition against disclosure of what was "said or done" during conciliation.

The Commission argues that the phrase "subsequent proceeding" should be limited to subsequent proceedings on the merits. The Commission asserts that the legislative history of the statute demonstrates that the statute was not intended to prevent disclosure of conciliation information during a subsequent specific enforcement action. The Commission directs us to the following:

No. 10-20291

> It should be noted that this is a ban on publicizing and not on such disclosure as is necessary to the carrying out of the Commission's duties under the statute . . . . The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but rather is aimed at the making available to the general public of unproven charges.

*Id*. at 879-80 (quoting 110 Cong. Rec. 12723 (1964) (statement of Sen. Humphrey)) (alteration in original).

The legislative history references 42 U.S.C. § 2000e-5(b) which provides, in relevant part

> [w]henever a charge is filed . . . the Commission shall . . . make an investigation thereof. . . . Charges shall not be made public by the Commission. . . . If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.

42 U.S.C. § 2000e-5(b). The relevant portion of the statute contains two distinct non-disclosure provisions: 1) prohibition against disclosure of filed charges and 2) prohibition against disclosure of what was said and done during conciliation. *See id*. The statement of Senator Humphrey addresses only the first non-disclosure provision and indicates Congress's intent that unproven, uninvestigated charges not be made known to the general public. *See E.E.O.C. v. Associated Dry Goods Corp*., 449 U.S. 590, 599-600 (1981) (discussing Senator Humphrey's statement as establishing Congress's intent with respect to

unproven charges); *Branch*, 638 F.2d at 880 (finding that Senator Humphrey's statement explained the purpose of the provision that "[c]harges shall not be made public by the Commisison"). The legislative history does not address the non-disclosure provision concerning conciliation, and is therefore unpersuasive when used in an attempt to limit the disclosure of conciliation material in a subsequent proceeding.

The Commission's interpretation of the phrase is also contrary to our case law. In *Olitsky v. Spenser Gifts, Inc.*, 964 F.2d 1471, 1476 (5th Cir. 1992), an employee attempted to introduce at trial a letter that the Commission objected to as conciliation evidence barred by the statute. We held that a distinction exists between "'factual material related to the merits of the charge and proposals and counter-proposals of compromise made by the parties during the EEOC's efforts to conciliate." 964 F.2d at 1477 (internal marks and citation omitted). "[D]isclosure of the former [is] allowable, but disclosure of the latter [is] not." *Id*. Title VII thus prohibits use of conciliation material in subsequent litigation, even by the parties to the proceeding. *See id*. What was "said or done" during conciliation must be revealed to determine the existence of an oral agreement. Such disclosure is clearly prohibited in a subsequent proceeding to establish the existence of an oral conciliation agreement.

**B.**

The Commission also points to our decision in *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. Dec. 1981), asserting that *Fulgence* permits specific enforcement of an oral conciliation agreement. In *Fulgence*, we held that "federal law determines the validity of oral agreements in employment discrimination actions brought pursuant to Title VII." 622 F.2d at 1209. Federal law does not require settlement agreements to be reduced to writing. *Id*. In reaching that conclusion, we found that a state law's "requirement that settlement agreements be reduced to writing might hamper

a significant federal interest, since Congress has mandated a policy of encouraging voluntary settlement of Title VII claims." *Id.* Although the Commission's argument is facially appealing, there is a critical distinction between *Fulgence* and the circumstances presented here. There is no express statutory privilege to prevent disclosure of settlement agreements. The communications at issue in *Fulgence* were settlement negotiations subject to common law. *Fulgence* does not contemplate or discuss the statutory provision governing conciliations pursuant to Title VII, and thus is not instructive in this matter.

The Commission's reliance on *E.E.O.C. v. Safeway Stores, Inc.*, 714 F.2d 567 (5th Cir. 1983) is likewise unhelpful. In *Safeway*, the Commission brought suit seeking specific performance on three written conciliation agreements entered into between the Commission and the employer. 714 F.2d at 569. The court found that it had jurisdiction to consider specific enforcement actions on conciliation agreements because "[i]f conciliation agreements were unenforceable, there is little question that this primary role of voluntary compliance would be undermined." *Id.* at 573. The Commission asserts that *Safeway* stands for the proposition that, in order to affect the primary purpose of Title VII, oral conciliation agreements must be subject to specific enforcement. However, the primary issue considered in *Safeway* was whether the district court had subject matter jurisdiction over an enforcement action of *written* conciliation agreements pursuant to Title VII. *Id.* at 569. Unlike a determination of whether the parties entered into an oral contract that necessarily requires an inquiry into what was "said or done," written conciliation agreements reflect the intent of the parties in reaching a settlement. The Commission's own regulations recognize the importance of reducing conciliation agreements to writing. *See* 29 C.F.R. § 1601.24(a) ("Where such conciliation attempts are successful, the terms of the conciliation agreement *shall* be reduced to writing and *shall* be signed by

No. 10-20291

the Commission's designated representative and the parties." (emphasis added)). As such, *Safeway* does not resolve whether a challenge to an alleged oral conciliation agreement is subject to specific enforcement actions.

## C.

Finally, the Commission asserts that prohibiting enforcement of oral conciliation agreements contravenes the purposes of Title VII, which was designed to encourage voluntary settlements of employment discrimination claims. *See*, *e.g.*, *Ricci v. DeStefano*, 129 S. Ct. 2658, 2674 (2009) (recognizing "Congress's intent that voluntary compliance be the preferred means of achieving the objectives of Title VII" (internal marks and citations omitted)); *Agro Distrib.*, 555 F.3d at 468 ("Conciliation is the preferred means of achieving the objectives of Title VII.") (quoting *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982) (internal marks omitted)); *Branch*, 638 F.2d at 880 ("The obvious purpose of the statute's prohibition on revealing statements made or actions taken during the Commission's conciliation efforts is to promote the congressional policy favoring unlitigated resolution of employment discrimination claims."); *Hutchings v. U.S. Indus., Inc.*, 428 F.2d 303, 309 (5th Cir. 1970) ("[I]t is clear that Congress placed great emphasis upon private settlement and the elimination of unfair practices without litigation on the ground that voluntary compliance is preferable to court action." (internal marks and citations omitted)). The Commission argues that prohibiting enforcement of oral conciliation agreements frustrates the ability of the Commission to enter into and enforce voluntary settlements.

The Commission is certainly correct to emphasize the importance of this policy, however these policy goals are not realized only through enforcement of conciliation agreements. Keeping private what is "said or done" during conciliation is necessary to encourage voluntary settlements. "[T]he prospect of disclosure or possible admission into evidence of proposals made during

conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII." *Branch*, 638 F.2d at 881. "[D]isclosure of conciliation materials, even to the parties, would discourage negotiated settlement and frustrate the intention of Congress." *Id*. To establish an oral contract, the Commission would necessarily have to disclose the proposals and counter-proposals of compromise made by the parties. Such disclosure is contrary to the plain language of the statute and frustrates the purpose of encouraging voluntary settlements. Congress was presumably mindful of the policy goals of Title VII when it enacted the relevant provisions.

The Commission argues that our holding creates an opportunity for abuse because "an employer would be free to enter into a conciliation agreement, bide its time for so long as it benefited from doing so, and then breach the agreement with no fear of sanction." *Safeway*, 714 F.2d at 573. This is not as significant a concern as the Commission makes it out to be. Upon revocation of an alleged settlement agreement, the Commission is permitted to bring suit on the merits, so long as a good faith attempt at conciliation is made. *See, e.g.*, *Agro Distrib.*, 555 F.3d at 468 (finding that the EEOC has fulfilled its statutory duty to attempt conciliation if it "(1) outline[s] to the employer the reasonable cause for its belief that Title VII has been violated, (2) offer[s] an opportunity for voluntary compliance; and (3) respond[s] in a reasonable and flexible manner to the reasonable attitudes of the employer." (citation omitted)). Moreover, our decision does not leave the Commission unable to seek enforcement of a conciliation agreement, nor does it hamper its ability to resolve employment disputes through voluntary compliance. This court has clearly established that a written conciliation agreement is enforceable by the parties in a specific enforcement action in the federal courts. However, we hold that when, as here, the Commission is seeking a determination of whether the parties entered into

No. 10-20291

an oral contract, such action necessarily requires an inquiry into what was said or done and is in direct violation of the statute.

## III.

In the nearly fifty years since Title VII has been in effect, the parties have not identified and this court has not found any federal action seeking to enforce an oral conciliation agreement. Yet this is certainly not the first time in which a party has changed its mind or reneged on a verbal settlement agreement. Should this court permit actions seeking to establish an oral conciliation agreement, we would certainly see an increase in such actions and would risk a decrease in the open communication necessary to reach voluntary settlements during the conciliation process. *See Branch,* 638 F.2d at 881. Neither of these outcomes further Congress's policy goals when establishing Title VII. *See id.*

For the foregoing reasons, we affirm the decision of the district court. AFFIRMED.